

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 25, 2015

<u>BY ECF</u>

Honorable Andrew L. Carter, Jr., U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
New York, New York 10007

Re: *United States* v. *Araujo, et al. (Carlos Vallejo)*, 13 Cr. 811 (ALC)

Dear Judge Carter:

We write in advance of the sentencing of defendant Carlos Vallejo ("Vallejo" or the "defendant") in connection with the above-referenced matter, scheduled to take place on March 30, 2015 at 2:00 p.m. For the reasons set forth herein, we submit that a significant term of imprisonment, within the advisory range of 70 to 87 months' imprisonment pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), is necessary to accomplish the objectives of sentencing, as set forth in Title 18, United States Code, Section 3553.

Vallejo was arrested on October 30, 2013, and the apartment where he lived with his mother and seven-year-old half-sister until his arrest was searched pursuant to a search warrant. On November 4, 2014, Vallejo pleaded guilty to both counts of Superseding Information S2 13 Cr. 811 (ALC). Count One charged him with participating in a conspiracy to burglarize pharmacies from in or about 2010 through on or about October 30, 2013. Count Two charged him with participating in a burglary of a pharmacy. Pursuant to the terms of the plea agreement, the defendant and the Government agreed that the Guidelines calculation for the offense level was governed by the provisions relating to distribution and possession with the intent to distribute controlled substances, since the goal of Vallejo's crimes was to steal controlled substances from the pharmacies to sell for a profit. Consistent with the plea agreement, and uncontested by the defendant in his sentencing submission, the United States Probation Department (the "Probation Department") has calculated that the defendant's total offense level is 27, based primarily on responsibility for distributing and possessing with the intent to distribute an amount of prescription controlled substances equivalent to more than 2,700 kilograms of marijuana (January 30, 2015 Presentence Investigation Report ("PSR") ¶ 52). Having sustained a prior conviction for unlawful possession of marijuana, resulting in one criminal history point, the PSR correctly calculates that the defendant remains within Criminal History Category I. (¶¶ 63-65.) Accordingly, the advisory Guidelines range is 70 to 87 months' imprisonment.

Vallejo was a major member of a massive burglary ring that operated for years, undeterred by possible apprehension. The PSR identifies 20 of the burglaries in which Vallejo personally participated. (PSR ¶ 13-32). Vallejo's prominent role in the offense is made clear by number of burglars' tools found during the search of his apartment, including multiple bolt cutters, a mallet, a hacksaw, a pry-bar, an ax, respirator masks, rope, a two-way radio, a jack, and a hydraulic door/bar-spreader. (Some photos attached as Exhibit A). The search also uncovered 2,837 hydrocodone pills and $540 in currency. Vallejo and his co-conspirators were undeterred by law enforcement. Even as other members of the burglary ring were arrested (some repeatedly) and incarcerated for various related offenses, Vallejo continued with his pattern of illegal conduct. Vallejo and the others stole hundreds and thousands of dollars in cash and controlled substances with the street value in the millions, and Vallejo profited handsomely from the crime. Indeed, photos from a cellphone seized from Vallejo show massive amounts of cash in his residence, along with expensive electronic equipment and expensive jewelry. (Some photos attached as Exhibit B). Vallejo has agreed to forfeit more than $124,000 in connection with his plea.

Vallejo's case for leniency is based primarily on the requesting the Court to consider his mother and young half-sister. We submit that Vallejo's family circumstances are an aggravating factor, not a mitigating factor. In her letter, Vallejo's mother states that Vallejo is a "young man [who] broke the laws of this country on that tragic day," and that his conduct was an aberration, that is, "not the son whom I raised." That is simply not the case. Vallejo, who has not had any employment since 2008 and no schooling since 2010 (PSR ¶¶ 87-88) lived in that apartment with his mother and half-sister (PSR ¶¶ 71-72) while he committed his crimes. Moreover, he brought the tools and proceeds of those crimes into their home, in his mother's plain sight and endangering the entire family. In Vallejo's apartment on the day of his arrest, law enforcement found a treasure trove of burglars' tools, along with cash and a substantial quantity of narcotics pills that were not in child-proof containers. Cellphone photos and the search warrant returns show that Vallejo had obtained and kept numerous expensive electronic devices, such as a large screen TV, Apple computer products, and video-game systems in the family house (including apparently games for children).

Most disturbingly, however, was the discovery of a holster, 14 rounds of .40-caliber pistol ammunition, zipties and a door spreader in a backpack, and marijuana packaged for resale in the family residence where Vallejo and his mother lived with his seven-year-old half sister. (Some photos attached as Exhibit C). Weapons and drugs are per se dangerous, but the Government has chilling information that seems to explain their presence in Vallejo's house. When the Government arrested co-defendant Andy Maccow, he waived his *Miranda* rights and confessed to participating in the pharmacy burglaries. He also provided a substantial amount of information about other crimes he participated in with his co-defendants, including Vallejo. For example, Maccow confessed that he had personally participated in a home-invasion robbery in Spanish Harlem with co-defendants Martin Avalo, Alvarado Dominguez, David Santiago and Carlos Vallejo. Maccow reported that Santiago drove the get-away car and that Avalo went in first with a firearm. As Maccow explained, Avalo is a very large person, so they sent him in first because he could keep going even if he were to be shot. Maccow reported that they used a pump to break the door open, and they restrained the occupants upon entering. Maccow also reported

engaging in another home invasion robbery in Washington Heights with Avalo, Guillermo Araujo and Vallejo.

As the Court is aware, Maccow publicly recanted his confession during an early status conference in a crowded courtroom with many family and community members present.  At one point, he even turned to face the crowd while disavowing his statements.   Maccow's choreographed recantation notwithstanding, the discovery of a holster, ammunition, zipties, a hydraulic pump,  and drugs in Vallejo's apartment offers strong corroboration of Maccow's post-arrest statements concerning Vallejo's participation in home-invasion robberies.  And the photos of cash, jewelry, and social gatherings involving Vallejo and the major participants in the burglaries and alleged home-invasion robberies corroborates Maccow's statements associating Vallejo with the others and Maccow's additional statements that they often returned to Vallejo's apartment after jobs to count the money.

Vallejo brought danger into his family home.  He flaunted the proceeds of his crime in front of his family—apparently even using criminal proceeds to purchase things for his mother and half-sister.  A significant term of imprisonment and is thus necessary to protect the public from more crimes, to protect Vallejo's family from him, and to promote respect for the law in a community that is closely watching this case to see how leniently the Court treats this burglary crew that wreaked havoc all over the City and openly flaunted it for so long.

Respectfully submitted,

PREET BHARARA
United States Attorney


by: _S/_____
    Jason A. Masimore
    Assistant United States Attorney
    (212) 637-2580

cc: Michael H. Sporn, Esq. (by ECF)