F3U3VALS                      Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                      13 CR 811 (ALC)

CARLOS VALLEJO,

                Defendant.

------------------------------x

                                    New York, N.Y.
                                    March 30, 2015
                                    2:15 p.m.


Before:

                    HON. ANDREW L. CARTER,

                                    District Judge


                        APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JASON MASIMORE
     Assistant United States Attorney

MICHAEL H. SPORN
     Attorney for Defendant

ALSO PRESENT:  Smyla Jones, U.S. Probation

F3U3VALS                        Sentence

1            THE DEPUTY CLERK:  Criminal cause for a sentencing in

2       case number 13 CR 811, United States v. Carlos Vallejo.

3       Counsel, please state your appearance for the government.

4            MR. MASIMORE:  Good afternoon, your Honor.  Jason

5       Masimore for the government.  With me at counsel table is

6       Probation Officer Smyla Jones from the United States Probation

7       Department.

8            THE DEPUTY CLERK:  For the defendant.

9            MR. SPORN:  Good afternoon, your Honor.  Michael Sporn

10      for Carlos Vallejo.

11           THE COURT:  Good afternoon.  Good afternoon,

12      Mr. Vallejo.  We're here today to impose sentence in United

13      States v. Carlos Vallejo.  In preparation for today's

14      proceeding I've reviewed the presentence report and the

15      submissions by defense counsel and the government.  Is there

16      anything else I should have?

17           MR. MASIMORE:  No, your Honor.

18           MR. SPORN:  No, Judge.

19           THE COURT:  Defense counsel, have you read the

20      presentence report and discussed it with your client?

21           MR. SPORN:  Yes, I have.

22           THE COURT:  Mr. Vallejo, have you read the presentence

23      report and discussed it with your attorney?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  You had an opportunity to discuss anything

F3U3VALS                          Sentence

1     that was incorrect there?

2                THE DEFENDANT:  Yeah.

3                THE COURT:  Defense counsel, are there any objections

4     to the presentence report?

5                MR. SPORN:  No, your Honor.

6                THE COURT:  Counsel for the government, have you read

7     and reviewed the presentence report and do you have any

8     objections?

9                MR. MASIMORE:  I have read it, reviewed it, and I have

10    no objections.  Thank you.

11               THE COURT:  I accepted the guilty plea myself, but

12    just for the record I again accept the guilty plea.

13               I'm no longer required to follow the sentencing

14    guidelines but I'm required to consider the applicable

15    guidelines in imposing sentence.  And to do so it is necessary

16    that we accurately calculate the guideline sentencing range.

17    I've done my own independent evaluation of the guideline range,

18    and does counsel for the government or defense object to the

19    guideline range as set forth in the presentence report?

20               MR. SPORN:  No, sir.

21               MR. MASIMORE:  No, your Honor.

22               THE COURT:  Then again, based on my own independent

23    evaluation and the lack of any objection, I accept the

24    guideline range as set forth in the presentence report and the

25    guideline range is 70 to 87 months.

1           I will listen to the parties regarding anything that

2     they wish to discuss regarding the appropriate sentence in this

3     case, starting with counsel for the defense.

4           MR. SPORN:  Thank you, Judge.  The Court can see from

5     our submissions that we have divergent positions here to some

6     extent, although not completely, and I won't dwell on what I've

7     already submitted.

8           In passing though, I do want to make a few comments

9     concerning the letter Mr. Masimore wrote to your Honor last

10    week.  One of the points he makes is that there were a lot of

11    expensive items found either found in my client's apartment or

12    in photographs that were observed from his cell phone, which he

13    says were in my client's apartment.  I'm not sure whether

14    that's accurate or not.

15          Putting that aside, I do want to point out that my

16    client's mother worked, his stepfather worked, he is a property

17    manager as you can see from the letter that he wrote.  And so,

18    there's a regular income stream there.  So, I think there is a

19    little bit of jumping to conclusions that some of the items

20    referenced by Mr. Masimore were necessarily the products of

21    unexplained wealth.  They were not.  Or that they were proceeds

22    of illegal activity.  That's not necessarily the case.  I'm

23    referring to things like the jewelry that was in the

24    photographs and electronic equipment.

25          Also, my client, as it happened, won a lot of money in

F3U3VALS                        Sentence

Atlantic City, and I have seen the receipt for those winnings,

and that accounts for the jewelry.  One of the two watches.

One of the other watches that's depicted in one of the

photographs is not his.

So, my point here is that there is a little bit of

inflation I think in the government's letter as far as making

the suggestion that there is a lot of stuff there that was

purchased as a result of my client's criminal conduct.  That is

just not necessarily the case.  And I don't want to make a big

deal out of it, because the overarching more important point is

that certainly there was illegal conduct, and my client has

stepped up and taken responsibility for it.

I've tried to suggest, I think I did say flatout in my

letter, that this conduct really can't be reconciled with the

profile that I gave your Honor in my submission of Mr. Vallejo,

and I haven't tried to make excuses or suggest anything

different.  All of the pictures of, for lack of a better term,

I'm sure the government would describe as burglars tools, they

are what they are.  And that's what my client has pled guilty

to and that's what he's accepted responsibility for.

There is a reference to large sums of cash that are

portrayed in cell phone pictures, but there was $540 taken when

the warrant was executed.  Not a paltry sum to be sure, but

certainly nothing like the amount of cash that apparently was

depicted in the cell phone photos.

1          Another point I want to make regarding the letter is

2     that everything that was there somehow put my client's young

3     sister at risk.  These items, and specifically I'm referring to

4     the pills that were recovered, were not accessible to her or to

5     my client's mother.  And I just think again, it is a little bit

6     of a stretch to say that or to reach the conclusion that my

7     client wasn't concerned about his sister and somehow put her in

8     harm's way.  It would be hard to argue, and I don't argue, that

9     these items shouldn't be there or that it wouldn't make any

10    difference.  But, I guess I'm just making the discrete point

11    that certainly he didn't leave these things lying around so his

12    sister or his mother could have easy or any access to them.

13    And I hope that in the government making that point, it doesn't

14    suggest to your Honor that my client has anything less than a

15    devotion to his little sister and to his mother, and they do

16    have a close relationship, and certainly we can all stand here

17    now and say it would be better if those things were not in the

18    apartment.  No one could disagree with that.

19          THE COURT:  You indicate they weren't accessible.

20    Where is it that you claim they were?

21          MR. SPORN:  In drawers and in places where she just

22    wasn't going to go looking.

23          THE COURT:  There is a difference between "wasn't

24    going to go looking" and "wasn't accessible."  These drawers

25    weren't locked drawers or anything of that nature, correct?

1          MR. SPORN:  No, I'm not going to say that all this

2     stuff was in some locked safe.  It was not.

3          THE COURT:  I will say regarding the pictures and the

4     government's submission, as defense counsel indicated,

5     Mr. Vallejo's mother has been working hard for a very long

6     period of time.  The stepfather is working.  I don't believe

7     that Mr. Vallejo engaged in this sort of behavior in order to

8     buy bread or cereal or fruit for the family.  To the extent

9     that he chose to buy flashy watches and the like, that seems to

10    me to be something that's kind of consistent with this.  I

11    don't take particular umbrage with that.  That may be very

12    relevant when it comes to restitution and the like.  But I

13    don't think this is the kind of act that he engaged in, based

14    on everything that I have seen in the presentence report,

15    because the family was starving, and this was purely for

16    sustenance.  This was for extra money.  To the extent that he

17    didn't actually spend that money for that, I'm sure this money

18    still contributed to the family's expenses in some way.

19          So, I'm not particularly concerned about that, if your

20    concern is that I am going to in some sense punish him because

21    he might have spent the proceeds from this illegal activity on

22    flashy items, you don't need to worry about that.  Obviously

23    that's something I'm going to have to consider when we deal

24    with restitution.

25          In addition, the government's submission seemed to

F3U3VALS                    Sentence

indicate that a co-defendant had made some statements claiming
that Mr. Vallejo had been involved in some other criminal
activity.  You are entitled to have a hearing on that if you'd
like to, but I'm not considering that in terms of those
statements that are made in terms of the sentence here today.
I don't plan on considering those statements that have not been
subject to any cross-examination.

         So to the extent that you wish to address that, I
don't think it is necessary for you to address that, but you
can.

         I'm sorry to cut you off.  Go ahead, continue.

         MR. SPORN:  I was saving that for last.  But in light
of your Honor's comments about it, I don't think there is
really anything more that I should add or could add.  Basically
I would have told you the same thing.

         So, the fact remains, well, there are two facts that
remain.  One is that my client doesn't have a criminal
background, and I think that does distinguish him from other
defendants in this case.  But the other fact that stands
alongside it is I can't run away from the fact this is not an
isolated incident.  This was a frolic that lasted over time,
and we recognize that he is going to have to pay a price for
that.  So, but, what I am suggesting and did suggest in my
letter is that a significant sentence that accounts for that
still is within the range that I have suggested.  In light of

1    the idea that we have that other good facts standing alongside

2    the bad facts of this case.  And I do think that that certainly

3    qualifies him for consideration for some kind of a break from

4    what the guideline range suggests to your Honor.

5            There are no excuses.  I'm not here to make excuses

6    for him.  I think it happened, and then they saw how they were

7    getting away with it, and they had themselves a good time, and

8    he couldn't walk away from it and he should have.

9            And now he's at a crossroads.  He has to decide which

10   Carlos Vallejo he is going to be going forward.  Is he going to

11   be kind of a guy that hangs out with the people that were

12   involved in this and become a career criminal?  Or is he going

13   to be the kind of person that all the people in the community

14   believed he's capable of being.

15           Part of it I suppose is just maturity.  And I think

16   he's capable of having the maturity to make the right decisions

17   going forward, and you can see that there are a lot of people

18   in the courtroom here today, including his mother, who support

19   him.  And on their behalf, we all ask that your Honor be as

20   lenient as possible.

21           THE COURT:  You did indicate there are a lot of people

22   in the courtroom.  Could you give me a general sense of who

23   these individuals are here?

24           MR. SPORN:  We have his mother and his stepfather.  We

25   have some relatives, and a lot of these other people are

F3U3VALS                      Sentence

personal friends of either him or his mother.  People from the

community.  Not necessarily relatives.

          THE COURT:  I do have some questions, counsel, in

terms of some of the things you said in terms of him being at a

crossroads and him needing to make this decision.

          One of the things that concerns me about this case is

that he does not appear to be someone who -- it seems that he

had already passed that point of the crossroads.  It seems that

he has all of this great potential.  He was a star basketball

player in high school.  He went to college in Sullivan County,

then he came back and went to college in the Bronx and was

working while he was in college.

          And then it seems odd to me that he was able to stay

away from all those temptations to the street calling, he was

able to stay away from all of that when he was at an extremely

young age, and then at approximately the age of 22, when his

sister, who I have no doubt that he cares about, is three years

old, he decides to stop going to college, to stop working, and

then get involved in this criminal activity.

          That really troubles me.  He's not someone who it

seems like earlier in his life he had one foot in the straight

and narrow path and one foot in the criminal life.  It seems

that both feet were firmly planted in doing the right thing and

the mature thing, and around the age of 22 he decided to take

both feet and jump squarely into the lifestyle he had avoided

F3U3VALS                         Sentence

for most of his life, and that's what troubles me.

          He's not someone who it appears to me needed to do
this because the family was in dire financial straits.  His
mother has been working very hard for a long time.  She owns
the salon.  I don't assume she is making millions of dollars at
this salon, but there is an income there.  She is a business
owner.  The stepfather makes money.  He certainly had the
potential and did in his life, Mr. Vallejo earned money, was in
college, and then in 2010 decides to drop out of college, stop
working, and get involved with this.

          That's something that really troubles me because it
seems that he had made it and then he decides to jump back in
there.  It is not someone when he's 18, 19 years old is trying
to decide who he's going to be and makes that wrong turn and
then has to get back on the path.  He was already well on his
way it seems to me.

          So can you talk about that?

          MR. SPORN:  Well, I can.  But I don't know that there
is that much to say.  I wish I had a ready answer for the
Court.  But I think the only answer is that the lure of it was
too much and it is all about poor choices.  And we all know
that he didn't choose well.  I guess it just seemed easy when
they were making money doing stuff they shouldn't have been
doing and that was a temptation, a lure that was too much of an
attraction for him to overcome.  And that was his choice.  It

1    was a bad choice, and he's paying for that choice now.

2         I don't have another easy answer to give to the Court.

3    There are no excuses.

4         THE COURT:  Okay.  Let me hear from counsel for the

5    government.

6         MR. MASIMORE:  Thank you, your Honor.  Just a few

7    points.  First, with respect to the discussion about money, the

8    effort there on the part of the government was to sort of place

9    this defendant in the hierarchy of defendants in the case.

10   There are some who profited more and others who profited less.

11   I think we can get into a debate about which money was where.

12   I would just point out that in some of the photographs the

13   bundles of money are clearly depicted on furniture that's

14   covered in plastic, which is distinctive of furniture in the

15   Vallejo home.  We know that from photographs on the defendant's

16   phone, but also at the time the search warrant was executed,

17   the furniture was covered in plastic.

18        But again, the point is to say this is a major

19   participant in the scheme, and somebody who was in a

20   relationship with the co-defendants and was in a relationship

21   to profit from the scheme.

22        With respect to the issue of devotion to the family.

23   The government's intent here was to point out danger.  We can't

24   really speak to devotion, nor would we.  We don't have an

25   opportunity to know the defendant or the defendant's family,

1  but what we do know are the objective facts.  And the facts

2  were the .40 caliber ammunition was on a small shelf, on the

3  bottom of a small shelf.  Not locked in any drawer, not even

4  shut in any drawer.  I am not sure where the controlled

5  substances were.  But they were in a plastic bag, which is

6  apparent parent in the picture.  These were pharmacy stock

7  bottles.  Those don't have a child proof container.  These

8  don't go to devotion, but goes to danger.  It is an important

9  consideration not only regarding the nature and circumstances

10  of the offense, but certainly the characteristics of the

11  defendant, that he would subject his family to dangers like

12  this.  That's important we think for the Court to consider in

13  crafting the appropriate sentence here.

14            Your Honor, I think what this certainly goes to is

15  just greed.  I think it could be phrased in terms of a poor

16  choice.  I think if it were sort of phrased in terms of a poor

17  choice, it would be have to be poor choice after poor choice

18  after poor choice.  The defendant could have withdrawn at any

19  point before committing any of these burglaries, especially

20  when there were close calls or others were being arrested.  But

21  I guess the lure of the greed was too much to overcome in this

22  case.  And that has to be punished.  Unfortunately, there is a

23  price for that.

24            Lastly, your Honor, I take it from your Honor's

25  comments that the Court is not considering some statements made

F3U3VALS                    Sentence

1   by a co-defendant.  If I may inquire, is it the Court's

2   position that it is not entitled to, or that it is a

3   discretionary matter that I might have an opportunity to

4   perhaps persuade the Court otherwise in this particular

5   instance?

6          THE COURT:  I think that I'm entitled to, and I think

7   it is a discretionary matter.  I do think that the defense

8   would be entitled to a hearing, and I think that in order for

9   me to really consider that, I'd need a little bit more proof

10  than what is there.  If you want to have such a hearing, we can

11  do that.

12         MR. MASIMORE:  I think, your Honor, I think where we

13  are, having spoken to defense counsel, I don't think we are in

14  a position where there is a dispute that the co-defendant said

15  in sum and substance what's been reported to law enforcement.

16  With respect to whether we can have the actual declarant

17  testify, it is very clear he is going to be unavailable.

18  Either he would assert his Fifth Amendment right, as I pointed

19  out in the letter, because I didn't want to give the

20  accusations without giving the full picture.  The Court was

21  already aware in the courtroom downstairs he stood up and

22  recanted.

23         Now, the government doesn't believe that recanting is

24  entitled to any weight whatsoever.  It was clearly fabricated

25  and designed to mollify the community and to get some heat off

1    of him.

2            I think, your Honor, and I would urge the Court to at

3    least consider in this defendant's history and characteristics

4    that not only did this other person, against his penal

5    interest, talk about robberies that weren't even part of the

6    investigation.  We were investigating pharmacy burglaries, but

7    these are crimes of violence.  Not only did he put himself and

8    the others in that situation against his interest, but also the

9    level of detail he provided.  Door spreaders being used, a

10   firearm being used, and people being restrained, seems to marry

11   up with door spreaders being found in this defendant's

12   apartment, a zip tie in the backpack with the door spreader,

13   the holster with the missing gun and ammunition.  We think

14   there is a sufficient indicia of reliability.  Certainly the

15   Court is entitled to rely on it.

16           I would urge the Court to at least consider this.  I

17   will be asking the same with respect to some of the other

18   defendants.  But I think particularly when evaluating a

19   defendant like this, where we have a defendant in criminal

20   history category I, and that doesn't necessarily paint a

21   complete picture of the human being that's going to fall under

22   the Court's sentence, we think it is important.

23           I'm happy to answer anything else, but I wanted to

24   make that argument at least, your Honor.

25           THE COURT:  Would you like a hearing on this issue?

F3U3VALS                        Sentence

 1    Again, I tend to agree with you.  I think that the declarant

 2    will probably be unavailable.  Do you want a hearing or further

 3    hearing on any of this?

 4            MR. MASIMORE:  If by hearing -- I want to understand

 5    what the Court is suggesting.

 6            THE COURT:  Here's what I'm saying.  I understand the

 7    government's position in terms of wanting to give me that

 8    information so that I am not misled into thinking that

 9    Mr. Vallejo was an angel and had never done anything illegal

10    before.  I do think obviously there's some issues with me

11    considering that.  I'm not sure what the government would want

12    me to do with that.  Again, that's sort of uncharged conduct.

13    Based on what I indicated here before, obviously Mr. Vallejo

14    has been arrested before.  It was for a small amount of

15    marijuana.  It doesn't mean a lot.

16            But what concerns me here is the fact that he hadn't

17    been arrested before and was in college and had jobs and had

18    all of these other opportunities available to him.  If in fact

19    I were to consider those uncharged crimes, that would just be

20    further evidence showing that even though he had all of these

21    options, he decided to get involved in this criminal and

22    violent behavior.

23            Again, with the number of burglaries here, and based

24    on his history, I don't think that it's necessary, and I

25    obviously do think there's some issues in terms of fairness to

F3U3VALS                        Sentence

the defendant.  Again, I think I'm entitled to consider it.
But I don't think that there is any dispute between the parties
that it was said.  There obviously may be a dispute as to
whether or not it was true, and it seems that given my
reservations anyway regarding his history and characteristics,
again, I am very concerned about the fact that he had all of
these other options and had availed himself of all these other
options before deciding to do this.  In my discretion, I don't
think it's something that I would be inclined to consider.  I
can consider it for whatever it's worth.  Again, if you want to
have a hearing, I don't think that's going to get us anywhere.
But, we can do it.

       MR. MASIMORE:  If we did proceed the route of a
hearing, I think standing here what it may consist of is the
government stipulating that the defendant, if called to
testify, would invoke.  And I would stipulate if the defendant
did not invoke the Fifth, he would completely recant his
testimony and say he never said those things.

       I understand what the Court saying and it sounds to me
that the Court has other information that's persuasive to the
Court in terms of how to view this defendant.  I just reserve I
guess this argument for future defendants, and maybe I'll try
to speak to other defense counsel to see what they think as
well.

       THE COURT:  Okay.

1          MR. MASIMORE:  Thank you, your Honor.

2          THE COURT:  Does defense counsel have anything on

3     that?

4          MR. SPORN:  Well, I don't know, Judge.  I thought we

5     put this to bed and I wasn't going to speak to it.  And

6     listening to your Honor, I think maybe that's still the best

7     course of action.

8          I have a different view of all of this.  In my view,

9     it shouldn't have been brought to your Honor's attention in the

10    first place because there is just not enough there.  And nor

11    will there be any opportunity to refute it.  So I don't think

12    it is appropriate to consider.  And I understand the

13    government's making a good faith effort to bring all facts to

14    the Court's attention, but let's face it.  If there was more to

15    it than this, there would have been charges.  It is not an

16    offense of conviction.  And there is very little to support

17    those statements, even if your Honor were to accept them as

18    true.

19         All that stuff that was recovered, the government is

20    making a leap in logic that therefore it means this other

21    unrelated contact is corroborated.  No, all that stuff

22    corroborates the charged conduct just as much if not more.  And

23    I just don't think it's appropriate for your Honor to consider

24    it.

25         And let me just say this:  I think your Honor has

F3U3VALS                        Sentence

```
 1    identified what's troublesome here.  I get that.  And I make
 2    the point in my submission that it seemed easy, and my client
 3    has discovered that there are no easy roads, and this is the
 4    price he's paying now for making that choice after choice after
 5    choice.  I think you make a choice and it works out and you
 6    just keep doing it.  And at the end of the day, it really
 7    didn't work out very well for him.
 8            THE COURT:  Let me just clarify.  It is certainly not
 9    inappropriate for the government to bring this to my attention.
10    It would not be inappropriate for me to consider this.  I
11    suppose to rephrase things more specifically, I have considered
12    it.  But I'm not really giving it any weight.  Obviously, the
13    co-defendant may have a penal interest and it may be a
14    declaration against his penal interest to talk about his own
15    conduct.  But, given what the context of that conversation
16    might have been, it might not necessarily be a declaration
17    against penal interest to implicate other people.  It may
18    actually be the opposite.  It may be a declaration in his penal
19    interest at that point to try to implicate others to
20    potentially help himself gain favor with the government.
21            As a result of that, while I've considered that, I
22    have no doubt that it was said.  I'm not sure how true it is,
23    given the declarant's interest at that time.  And even if it is
24    true, again, when I am concerned about primarily, given the
25    history and characteristics of the defendant, is the fact that
```

1    he had all these other options available to him and took

2    advantage of them and then still engaged in this conduct which

3    was continuous.  It wasn't just a one-off thing.  It wasn't

4    just he slipped once.  He did this over and over and over and

5    over again.

6              Anything else from the government?

7              MR. MASIMORE:  No, thank you, your Honor.  I guess I

8    always say no.  When the Court gets to it, there was issue of

9    forfeiture.  I wanted to remind the Court.  It is in the PSR.

10             THE COURT:  Mr. Vallejo, I will give you an

11   opportunity to address me if you would like.  You can say

12   anything you want.  You don't have to say anything, but if

13   you'd like, here is your turn to address me.

14             THE DEFENDANT:  No, thank you.

15             THE COURT:  Defense counsel, there are many people

16   here.  If you'd like, I would let you call one person if you'd

17   like from Mr. Vallejo's friends or family if you'd like to

18   address the Court briefly.

19             MR. SPORN:  I appreciate that opportunity, Judge.

20   Frankly, I hadn't contemplated that.  So I'd need some

21   significant time to do that.  I think we're fine without doing

22   it.

23             THE COURT:  Okay.  So you wish to do that or no?

24             MR. SPORN:  I think not.

25             THE COURT:  Okay.

F3U3VALS                         Sentence

1          MR. SPORN:  My client's mother of course is the most

2     prominent, and if we are going to hear from her I'd want to ask

3     her if she's comfortable doing that, and number two we would

4     need the interpreter to do that.

5          THE COURT:  I certainly have all of the letters that

6     have been submitted from his family and friends.  And I

7     appreciate his family and friends being here in court to

8     support him.  I'm sure he appreciates that as well.

9          Again, what troubles me the most about -- there are

10    many things that trouble me.  But what is really troubling me,

11    what I can't get my mind around, is again, it seems to me that

12    he was on the right track and had been on that track for quite

13    some time before deciding to do this.  So, the kind of

14    arguments that are typically made that this person is young and

15    they made a mistake, it is a little different in this context.

16    Because while he's still young, it seems to me he'd sort of

17    crossed the Rubicon.  He had gotten to that point where he was

18    in college, he was working.  He spent some time away from the

19    home before he moved back in.  He had all of these options and

20    all of these opportunities and had all of this great potential

21    from all the letters that are submitted by all the family and

22    friends.  And it's disconcerting that he attended high school,

23    did well in high school, graduated from high school, ironically

24    the high school was the High School for Law and Public Service.

25    And again, attended some college, and had all of this great

F3U3VALS                        Sentence

1    potential and decided to throw it away.

2              So again, those typical arguments about peer pressure,

3    it seems his peers, when he was working and in college, weren't

4    engaged in this sort of thing.  And he decided to get with a

5    different group of peers that maybe he had been avoiding all

6    along to get involved in this.

7              Is there anything else that counsel wish to say to

8    address that concern that I have?

9              MR. SPORN:  Well, I think I would be repeating myself,

10   Judge.  It's troublesome, and greed is a hard way of putting

11   it.  But when I said there is a lure there that he didn't pass

12   up and should have, I mean, of course that's what we're talking

13   about.  And this was just one long extended joy ride.  I don't

14   think it means that he's not capable of making better choices

15   going forward.  He went away to college, but he grew up in a

16   neighborhood where the attractions of the street are always

17   there.  And he didn't make a good adjustment in college being

18   away from that environment.  He's older now.  And when he was

19   in Sullivan County, he was a long way from the streets of the

20   Bronx.  And I think he didn't have the maturity to make that

21   leap at that time.

22             THE COURT:  I understand.  But it seems, again, from

23   2008 to 2010, he was back in that community and he was still

24   going to college at Bronx Community College and still working

25   sporadically during that time and not engaged in any of this

1    stuff.  And then in 2010, he decided to just --

2             MR. SPORN:  Well, but you're right, but these

3    pressures and these attractions were always there.  He knew

4    some of these people.  These are kids he grew up with.

5             THE COURT:  Right.  That's I guess exactly what my

6    concern is.  If he's able to grow up with these kids and avoid

7    coming to this pressure when he's 14, 15, 16, 17, 18, 19, 20,

8    21, 22, going to college and working, why at 22 do you decide

9    to now do that.  That's what troubles me.  When he's in college

10   and working.

11            MR. SPORN:  I'll give you a one word answer:

12   Stupidity.  There is really no excuse for it, Judge.  I wish I

13   could give you some sociological explanation that would be

14   compelling.  But, he just made poor choices.  But I guess my

15   point in my letter, certainly, and with all of the attachments

16   is that he's not a one-dimensional stick figure.  There is

17   obviously more to him than that.  And I'm accentuating the

18   positive.

19            THE COURT:  No, I understand that, and again that's

20   what troubles me.  He's not one dimensional.  He is not this

21   crime.  He is much more than that.  Which is why it is

22   disconcerting with all of his potential, and much of that

23   potential he had already realized he decided to get involved in

24   this.

25            Mr. Vallejo, are you ready for me to impose sentence

F3U3VALS                          Sentence

1    in this case?

2                THE DEFENDANT:  Yes, your Honor.

3                THE COURT:  Are you satisfied with your legal

4    representation up to this point?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  Again, Mr. Vallejo, if you cannot afford

7    to hire an attorney, the Court would give you an attorney for

8    free.

9                Counsel, are you retained or appointed on this matter?

10               MR. SPORN:  Appointed, your Honor.

11               THE COURT:  Is there any reason that sentence should

12   not be imposed, counsel for the government?

13               MR. MASIMORE:  No, your Honor.

14               THE COURT:  Counsel for the defense?

15               MR. SPORN:  No, sir.

16               THE COURT:  Regarding forfeiture, as a result of

17   committing the conspiracy to burglarize pharmacies alleged in

18   Count One and the burglary offense alleged in Count Two,

19   Mr. Vallejo shall forfeit to the United States pursuant to 18

20   U.S.C. 981(a)(1)(C) and 28 U.S.C. 2461 any property, real or

21   personal, which constitutes or is derived from proceeds

22   traceable to such offenses, including, but not limited to,

23   $124,249 in United States currency, a 2010 Mercedes Benz ML 63

24   AMG bearing VIN 4JGBB7HBXAA561332, a 2010 Mercedes Benz 63 AMG

25   bearing VIN WDDNG7HB3AA310953, a 2005 Dodge Magnum RT bearing

F3U3VALS                          Sentence

 1    VIN 2D8GV582X5H649022, and a 2005 Honda Odyssey Touring bearing

 2    VIN 5FNRL38875B072204.

 3              Let me hear from the government regarding restitution.

 4              MR. MASIMORE:  Your Honor, may the government submit

 5    materials within the 90-day statutory period?

 6              THE COURT:  Okay.  Defense counsel, any position on

 7    that?

 8              MR. SPORN:  No, your Honor.

 9              THE COURT:  I'll impose the special assessment of

10    $200.  I will not impose a fine.

11              Regarding supervised release, I will impose a term of

12    supervised release of three years on each count to run

13    concurrently with each other with the mandatory conditions and

14    the standard conditions of supervision one through 13, along

15    with the following special conditions:  That he shall provide

16    the probation officer with access to any requested financial

17    information, he shall not incur new credit charges or open

18    additional lines of credit without the approval of the

19    probation officer unless he is in compliance with the

20    installment payment schedule, he'll participate in a program

21    approved by the probation office which may include testing to

22    determine whether he has reverted to using drugs or alcohol.  I

23    authorize the release of available drug treatment evaluations

24    and reports to the substance abuse treatment provider as

25    approved by the probation officer.  He'll be required to

1    contribute to the costs of services rendered in an amount

2    determined by the probation officer, based on ability to pay or

3    availability of a third-party payment.  He shall submit his

4    person, residence, place of business, vehicle or other premises

5    under his control to a search on the basis that the probation

6    officer has reasonable belief that contraband or evidence of a

7    violation of the conditions of the release may be found.  The

8    search must be conducted at a reasonable time and in a

9    reasonable manner.  Failure to submit to a search may be

10   grounds for revocation.  He shall inform any others residents

11   that the premises may be subject to search pursuant to this

12   condition.

13            He is to report to the nearest probation office within

14   72 hours of release from custody.

15            Regarding the term of custody.  I'm imposing a

16   sentence of 70 months imprisonment to run concurrently.

17            Defense counsel have any position regarding drug

18   treatment or place of incarceration?

19            MR. SPORN:  We do, your Honor.  We would respectfully

20   ask that your Honor recommend to the bureau of prisons

21   designation to Fort Dix.  It is close to the family.  And also

22   a recommendation for the drug and alcohol treatment program

23   there, which I believe exists at that location.

24            THE COURT:  Okay.  Counsel for government, any

25   position on that?

1           MR. MASIMORE:  No position.

2           THE COURT:  I will make that recommendation.

3           Mr. Vallejo, I sincerely hope that you have learned

4     from this.  I know this is very difficult for you.  You have a

5     lot of potential, you've done a lot of great things with your

6     life, and I hope when you get out, you get back on the right

7     track and consider going back to college and considering going

8     back to leading a law-abiding life.  Because you were able to

9     do a lot of great things in your young life before you decided

10    to get involved in all of this.  So I wish you the best of luck

11    with that.

12          I sincerely hope that your family will continue to

13    support you while you are in prison, and that you should

14    continue to obviously try to maintain contact with them.

15          I'd like to thank the family and all of the friends

16    for being here and for all the letters of support that you've

17    submitted to help me in this very difficult decision.

18          Are there any open counts?

19          MR. MASIMORE:  There are.  At this time the government

20    moves to dismiss any and all open counts as to this defendant.

21          THE COURT:  That is granted.

22          Mr. Vallejo, you have a statutory right to appeal.

23    There are time constraints on your ability to appeal.  You

24    should discuss that with your attorney.  If you cannot afford

25    to hire an attorney to help you prosecute an appeal, the Court

F3U3VALS                      Sentence

1     would give you an attorney for free.

2              Is there anything else from the government?

3              MR. MASIMORE:  No thanks, Judge.

4              THE COURT:  Is there anything else from the defense?

5              MR. SPORN:  No, thank you.

6              THE COURT:  Thank you.  Have a good day.

7                            o0o

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25